

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00194-CR

DAMIAN LAMON MURKLEDOVE                                    APPELLANT

V.

THE STATE OF TEXAS                                             STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## OPINION

----------

## I. INTRODUCTION

A jury convicted Appellant Damian Lamon Murkledove of capital murder, and in accordance with the mandatory sentencing statute, the trial court sentenced him to life in prison without the possibility of parole. *See* Tex. Penal Code Ann. §§ 12.31(a)(2), 19.03(a)(2) (West Supp. 2013). In ten points, he complains of the jury instructions, the trial court's instructions to the venire panel,

the admission of his written statements, and the constitutionality of mandatory life without parole sentencing.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

One evening after Murkledove played cards with friends, Dominique Jones asked to speak with him outside.  Jones informed Murkledove that he wanted to burglarize the house of their mutual acquaintance, Daniel Garner.  Jones told Murkledove that he knew when the house would be vacant but that if Garner happened to be there, Jones "would smoke him."  Jones offered for Murkledove to participate in the break-in.  Murkledove went home that night and thought about what Jones had told him.

The following morning, after Murkledove showered, he texted Jones and said he "might need to hit . . . a lick," which means to break into a house and steal property.  Jones responded that he was going to burglarize Garner's house and asked if Murkledove could find a ride.  Murkledove called Bryan Jones,[1] who agreed to provide transportation in exchange for $125.  Murkledove then texted Garner to ask if he was at work; Murkledove was afraid that if Garner was home during the break-in, Jones might shoot him.  Garner said he was not at work.

Bryan picked up Murkledove, and the two drove to Jones's house to get him.  After picking up Jones, they went to Jones's grandmother's house so that Jones could get his gun from the house.  They then drove to Garner's house, and

---

[1]Bryan Jones is referred to as "Bryan"; Dominique Jones is referred to as "Jones."

Bryan waited in the car while Murkledove and Jones walked up to the house. Jones opened the door and saw Garner inside playing videogames. Jones shot and killed him. Jones and Murkledove loaded Bryan's vehicle with items from Garner's home, including a television, two X-box gaming systems, a computer, a basket full of purses, a small lockbox, and an assault rifle.

The men drove to Jones's grandmother's house. Jones told Murkledove to "sneak" the stolen rifle inside the house. Jones's uncle opened the lockbox in the backyard, and they found prescription medicine inside. Murkledove threw the medicine in the sewer across the street. Jones, Murkledove, and Bryan drove to another house, where they traded the TV for a pair of tire rims, some marijuana, and money. The men returned to Jones's grandmother's house, where they played dice for a while before Bryan drove Jones and Murkledove home. Jones took the purses with him to give to his mother.

### III. JURY INSTRUCTIONS

Murkledove's first through fourth and sixth through eighth points all involve the trial court's jury instructions. We will address each of his complaints below.

### A. Standard of Review

The purpose of the jury charge is to inform the jury of the applicable law and guide the jury in its application in the case, and the trial judge is ultimately responsible for the charge's accuracy. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). In our review of a jury charge, we first determine whether error occurred; if error

3

did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence when requested. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). A defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). The defendant bears the burden of showing some evidence exists to support each element of the defense. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 657–58. A trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence. *See Shaw*, 243 S.W.3d at 657–58. When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

### B. Instruction on the Law of Parties

In his first two points, Murkledove argues that by including part of the definition of the offense of conspiracy in the jury charge, the court actually instructed the jury that it could convict him as a party to the more serious offense

4

of capital murder if the jury found him guilty of conspiracy, an offense for which he was not indicted.

A person commits the offense of capital murder when he intentionally causes the death of an individual during the course of committing or attempting to commit burglary or robbery. Tex. Penal Code Ann. § 19.03(a)(2); *see also id.* §§ 19.02(b)(1), 29.02(a), 30.02(a) (West 2011). A person commits the offense of criminal conspiracy if, with the intent that a felony be committed, he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the felony offense. *Id.* § 15.02(a)(1) (West 2011).

A person may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. *Id.* § 7.01(a) (West 2011). The law of parties, set forth in penal code section 7.02, may be applied to a case even though no such allegation is contained in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), *cert. denied*, 502 U.S. 961 (1991); *see* Tex. Penal Code Ann. § 7.02 (West 2011). Under section 7.02(a), a person may be found guilty of an offense as a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2). Section 7.02(b) provides another theory of party liability as a co-conspirator:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though

5

having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b).

Here, the abstract portion of the court's charge included instructions on the law of parties from subsections (a) and (b) of section 7.02. It also included a definition of the term "conspiracy" as follows: "The term 'conspiracy' means an agreement with one or more persons that they or one or more of them engage in conduct that would constitute a felony." The application portion of the court's charge authorized Murkledove's conviction for capital murder as the perpetrator of Garner's death, as a party to the offense under the law of parties set forth in section 7.02(a), or as a party to the offense under the law of parties set forth in section 7.02(b). Specifically regarding the third theory, the charge instructed the jury:

> If you find from the evidence beyond a reasonable doubt that Damian Murkledove and Dominique Jones entered into an agreement to commit the offense of robbery or burglary of a habitation as above defined of Daniel Garner and pursuant to that agreement, they did carry out their conspiracy and that on or about the 19[th] day of February, 2010 in Tarrant County, Texas, while in the course of committing such robbery or burglary, Dominique Jones intentionally caused the death of Daniel Garner by shooting him with a firearm, and that the defendant Damian Murkledove pursuant to the conspiracy, if any, with the intent to assist Dominique Jones in the commission of said robbery or burglary, then and there at the time of the shooting was acting with and aiding or attempting to aid Dominique Jones in the execution of the robbery or burglary of Daniel Garner, if any, and that the shooting of Daniel Garner was committed in furtherance of the conspiracy, if any, of Damian Murkledove and Dominique Jones to rob Daniel Garner or to burglarize the home of Daniel Garner and that the shooting of Daniel

6

Garner, if any, was an offense that should have been anticipated as a result of the carrying out of the conspiracy, then you will find the defendant, Damian Murkledove, guilty of Capital Murder as charged in the indictment.

The court of criminal appeals, when faced with an almost identical jury instruction to the one at issue here, has addressed the same argument that Murkledove advances here. *See Montoya*, 810 S.W.2d at 165. In *Montoya*, the court of criminal appeals rejected the appellant's argument that the inclusion of the theory of conspiracy in the court's charge erroneously allowed the jury to consider whether the appellant was guilty of the separate offense of criminal conspiracy under penal code section 15.02. *Id.* The court held that the charge, which also defined the term "conspiracy," "merely contained an alternative 'parties' charge as provided in [penal code section] 7.02." *Id.*; *see also English v. State*, 592 S.W.2d 949, 954 (Tex. Crim. App.) (noting that section 7.02(b) "does not address itself to the offense of conspiracy, but to an [a]ttempt to carry out a conspiracy[]; it encompasses attempted or completed offenses that are the object of the conspiracy"), *cert. denied*, 449 U.S. 891 (1980).

Contrary to Murkledove's argument, the application of section 7.02(b) and the inclusion of the definition of the term "conspiracy" from section 15.02 did not permit the jury to convict him of capital murder under the theory of party liability if it found him guilty of the offense of conspiracy. *See Gilmore v. State*, 397 S.W.3d 226, 245 (Tex. App.—Fort Worth 2012, pet. ref'd); *Wood v. State*, 4 S.W.3d 85, 89 (Tex. App.—Fort Worth 1999, pet. ref'd); *see also Ladd v. State*, 3

7

S.W.3d 547, 565 (Tex. Crim. App. 1999) (holding that defining term "conspiracy" as that term is used in section 7.02(b) was not error), *cert. denied*, 529 U.S. 1070 (2000). Instead, the charge properly allowed the jury to find Murkledove guilty of capital murder under the law of parties. *See Wood*, 4 S.W.3d at 89.

We overrule Murkledove's first and second points.

## C. No Instruction on Criminal Conspiracy and Its Sentencing Range

In his third point, Murkledove argues that the trial court erred by not instructing the jury that it could convict him of criminal conspiracy and by not including the penalty range for that offense.[2]

Murkledove did not request a lesser-included offense instruction on conspiracy. The trial court has no duty to sua sponte instruct the jury on a lesser-included offense because a lesser-included offense, like a defensive issue, is not "applicable to the case" absent a request for its inclusion in the jury charge. *See Tolbert v. State*, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010).

Regarding an instruction on the penalty range for conspiracy, Murkledove was not charged with conspiracy, the jury did not receive an instruction on it, and in any event, an instruction regarding punishment is not proper in the guilt-innocence stage of trial. *See Staggs v. State*, 503 S.W.2d 587, 588 (Tex. Crim. App. 1974) ("[I]nclusion of information regarding punishment in the charge at the

---

[2]The offense of criminal conspiracy is "one category lower than the most serious felony that is the object of the conspiracy," here, capital murder. *See* Tex. Penal Code Ann. § 15.02(d).

guilt-innocence stage is improper."); *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a) (West Supp. 2013) (providing that trial court shall instruct jury on issue of guilt or innocence, without authorizing jury to pass upon the punishment to be imposed).

We overrule Murkledove's third point.

### D. Instruction on Principal or Party

In his fourth point, Murkledove argues that the trial court erred by including in the jury instructions an instruction that it could convict him as either a principal or a party. Murkledove argues that this instruction was erroneous because the indictment did not contain a parties allegation.

It is well-settled that a jury may be charged on the law of parties even though no such allegation is contained in the indictment. *Marable v. State*, 85 S.W.3d 287, 287 & n.2 (Tex. Crim. App. 2002) (collecting cases); *see Adames v. State*, 353 S.W.3d 854, 861 (Tex. Crim. App. 2011) (reaffirming that state and federal law both specify that due process does not require defendant's culpability as a party to be plead in charging instrument), *cert. denied*, 132 S. Ct. 1763 (2012). "This rule applies not only to the law of parties found in [s]ection 7.02(a)(2) [of the Texas Penal Code] but also the law of parties found in [s]ection 7.02(b)." *Montoya*, 810 S.W.2d at 165. Thus, the trial court did not err by including an instruction on the law of parties in the jury charge even though it was not pled in the indictment.

We overrule Murkledove's fourth point.

### E. No Instruction on Independent Impulse Defense

In his sixth point, Murkledove argues that the trial court erred by denying his request for a jury instruction on the law of independent impulse. The theory behind an independent impulse instruction is that, although the defendant had agreed to participate in some form of offense rising to the level of a felony, the offense for which he is being prosecuted arose from an independent impulse. *See Mayfield v. State*, 716 S.W.2d 509, 515 (Tex. Crim. App. 1986), *overruled by Solomon v. State*, 49 S.W.3d 356 (Tex. Crim. App. 2001). Here, Murkledove argues that he was entitled to an instruction on independent impulse because evidence showed that he was "admittedly intent" on burglarizing Garner's home but that he did not anticipate that Jones would shoot Garner.

The trial court must instruct the jury on properly-requested statutory defenses raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). But a defense that is not recognized by the legislature in the relevant statute as either a defense or as an affirmative defense does not warrant a separate instruction. *See Giesberg v. State*, 984 S.W.2d 245, 246–47 (Tex. Crim. App. 1998), *cert. denied*, 525 U.S. 1147 (1999). Independent impulse is not a listed statutory defense in the penal code. *See Solomon*, 49 S.W.3d at 368. As the court of criminal appeals has explained, an instruction on independent impulse is merely a negation of elements in the State's case; therefore, "its inclusion would be superfluous, and in fact, would be an

10

impermissible comment on the weight of the evidence." *Id.; see Walters*, 247 S.W.3d at 209–10; *Giesberg*, 984 S.W.2d at 250.

Here, Murkledove's proposed defensive issue would simply negate the party-liability theory of the State's case; all that was required, then, was for the appropriate portions of the jury charge to track the language of section 7.02(b). *See Solomon*, 49 S.W.3d at 368. In addressing Murkledove's first two points above, we set out the applicable portions of the jury charge, which track the language of penal code section 7.02(b). The trial court did not err by denying Murkledove's request for an instruction on the law of independent impulse.

We overrule Murkledove's sixth point.

### F. No Instruction on Necessity Defense

In his seventh point, Murkledove argues that the trial court erred by denying his request for a jury instruction on the defense of necessity. He argues that evidence existed that he acted out of necessity to preserve his own life because Jones said he would kill Garner and Murkledove feared that if he did not participate, Jones would kill him too.

The penal code provides that it is a defense to prosecution if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

11

Tex. Penal Code Ann. § 9.22 (West 2011); *see id.* § 9.02 (West 2011). In addition to the statutory elements, the court of criminal appeals has held that a defendant must present evidence "essentially admit[ting] to every element of the offense including the culpable mental state" in order to raise a necessity defense. *Shaw*, 243 S.W.3d at 659.

The first prong of the necessity defense requires evidence of a reasonable belief of both immediate necessity and imminent harm. Tex. Penal Code Ann. § 9.22. "Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant. *See id.* § 1.07(a)(42) (West Supp. 2013). A defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of "immediate necessity" or "imminent harm" as legally defined. *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd); *see Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "'Imminent' means something that is immediate, something that is going to happen now." *Dewalt*, 307 S.W.3d at 454. Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm, in other words, when a "split-second decision" is required without time to consider the law. *Pennington*, 54 S.W.3d at 857; *see also Dewalt*, 307 S.W.3d at 454.

Here, Murkledove points to a written statement that he made to police as support for his requested jury instruction on necessity. Reviewing this statement

and the entirety of the record in the light most favorable to Murkledove's necessity defense, no evidence shows any imminent danger to him or his family. His statement to police does not demonstrate that he had to make a "split-second decision" in order to avoid harm to himself or his family. *See Dewalt*, 307 S.W.3d at 454. Instead, his statement shows that he (1) learned the night before Garner's death that Jones wanted to burglarize Garner's home and would kill Garner "if it came down to it," (2) thought about Jones's proposal when he went home that night, (3) texted Jones while still at home the following morning to say that he needed to burglarize a house, (4) arranged for transportation to Garner's house while still at home, and (5) rode with Bryan to pick up Jones and then rode with Bryan and Jones to pick up a gun before going to Garner's house. Moreover, nothing in the record reflects that Jones made any threats—immediate or otherwise—to Murkledove if he did not assist with the break-in. Even if one could infer that Murkledove feared the possibility of or potential for harm to himself or his family, no evidence exists upon which an inference could be made that harm was imminent when he decided to act. *See Washington v. State*, 152 S.W.3d 209, 212 (Tex. App.—Amarillo 2004, no pet.) ("[T]he evidence permits one to reasonably infer no more than that appellant feared the possibility of or potential for harm and acted in response thereto."); *see also Scroggs v. State*, 396 S.W.3d 1, 13 (Tex. App.—Amarillo 2010, pet. ref'd, untimely filed) (noting that appellants had overnight to deliberate the situation before they embarked on their felonious conduct). Reviewing the record in the light most favorable to

13

Murkledove's necessity defense, we hold that no evidence exists that Murkledove reasonably believed his conduct was immediately necessary to avoid imminent harm.  *See* Tex. Penal Code Ann. § 9.22.  Thus, the trial court did not err by denying Murkledove's request for an instruction on necessity.

We overrule Murkledove's seventh point.

## G.  No Instruction on Duress Defense

In his eighth point, Murkledove argues that the trial court erred by denying his request for a jury instruction on the defense of duress.  He argues that evidence existed that he acted under duress because Jones threatened him.

The affirmative defense of duress applies when the accused "engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another."  *Id.* § 8.05(a) (West 2011).  To raise the defense, the evidence must show both compulsion and imminency.  Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure," and imminency exists where the person making the threat intends and is prepared to carry out the threat immediately on the accused's failure to commit the charged offense.  *Id.* § 8.05(c); *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that threat of future harm cannot be construed as "imminent" under the statute).

As we stated above in addressing Murkledove's seventh point regarding the necessity defense, no evidence exists in the record upon which an inference

could be made that any threats perceived by Murkledove were imminent such that he was compelled to participate in the break-in that led to Garner's murder. *See* Tex. Penal Code Ann. § 8.05(c); *Anguish*, 991 S.W.2d at 886. Murkledove stated that he was worried that Jones would kill him if he did not participate, but there is no evidence that Jones made a specific, objective threat to Murkledove or another if Murkledove did not participate in the break-in. *See Cameron v. State*, 925 S.W.2d 246, 250 (Tex. App.—El Paso 1995, no pet.) (finding no objective basis for a claim of compulsion when evidence showed only that defendant was afraid of co-conspirator's temper and followed his orders). And although Jones did threaten to kill Garner during the break-in "if it came to that," after learning this, Murkledove went home, went to bed, woke up the next morning, showered, and contacted Jones on his own initiative to discuss "hitting a lick." While still at home, Murkledove then arranged for a driver to take him and Jones to Garner's house. Any threats perceived by Murkledove when he learned of Jones's plan were not imminent such that he was entitled to a duress instruction. *See* Tex. Penal Code Ann. § 8.05(c); *Anguish*, 991 S.W.2d at 886. Further, the defense of duress is unavailable if a defendant "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." Tex. Penal Code Ann. § 8.05(d). For the above reasons, we hold that the trial court did not err by denying Murkledove's request for a jury instruction on duress.

We overrule Murkledove's eighth point.

15

## IV. SECTION 12.31 INSTRUCTION TO VENIRE PANEL

In his fifth point, Murkledove argues that the trial court erred by not instructing the potential jurors that a sentence of life without parole is mandatory upon conviction of a capital felony.

Section 12.31 of the penal code requires that in a capital felony trial in which the State does not seek the death penalty, prospective jurors should be informed that a sentence of life imprisonment without parole is mandatory on conviction of the capital felony. *Id.* § 12.31(b)(2).

The record reflects that the trial court did not instruct the jurors pursuant to section 12.31(b). However, Murkledove did not object or request that the trial court give such an instruction. As a prerequisite for presenting a complaint for appellate review, rule of appellate procedure 33.1(a) requires a timely objection with sufficient specificity to make the trial court aware of the complaint. *See* Tex. R. App. P. 33.1(a); *Smith v. State*, 420 S.W.3d 207, 214 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (holding failure to request trial court instruct panel pursuant to section 12.31(b) forfeited complaint); *Flowers v. State*, 959 S.W.2d 644, 646 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (same).

Moreover, even if Murkledove had preserved his complaint for appeal, he was not harmed by the trial court's failure to instruct the potential jurors pursuant to penal code section 12.31(b). *See Ford v. State*, 73 S.W.3d 923, 925–26 (Tex. Crim. App. 2002) ("Under our harmless error rule the violation of a mandatory statute does not, by itself, call for the reversal of a conviction."); *see also* Tex. R.

16

App. P. 44.2(b). In conducting a harm analysis of a jury-formation error, a court should consider what right is protected by the statute. *Ford*, 73 S.W.3d at 925–26; *McCluer v. State*, No. 14-09-00058-CR, 2010 WL 1438957, at *9 (Tex. App.—Houston [14th Dist.] Apr. 13, 2010, pet. ref'd) (not designated for publication) (applying *Ford* to section 12.31(b) error), *cert. denied*, 132 S. Ct. 319 (2011). The right protected by section 12.31(b) is the statutory right to have the prospective jurors informed that the State is not seeking the death penalty and that a sentence of life imprisonment without parole is mandatory upon conviction of the capital offense. *See* Tex. Penal Code Ann. § 12.31(b). And in jury-formation issues, the substantial right at issue is the ability to empanel only those jurors who are qualified to serve. *See Gray v. State*, 233 S.W.3d 295, 301 (Tex. Crim. App. 2007). If an appellant does not present record evidence that demonstrates that the trial court's error deprived him of a jury comprised of legally qualified jurors, he suffered no harm. *Id.*

Here, the record reflects that although the trial court did not instruct the potential jurors of the mandatory life sentence, the potential jurors ultimately received this information by defense counsel during voir dire. Defense counsel told the prospective jurors, "Capital murder has got two punishments, the death penalty or life without parole. Real simple. It's the death penalty or life without parole. [The prosecutor] told you they waived the death penalty. You find him guilty of capital murder, he never leaves the prison." Murkledove points to nothing in the record indicating that the lack of a section 12.31(b) instruction by

17

the trial court resulted in the empaneling of unqualified jurors. *See id.*; *Smith*, 420 S.W.3d at 214; *McCluer*, 2010 WL 1438957, at *9.

We overrule Murkledove's fifth point.

## V. ADMISSION OF WRITTEN STATEMENTS

In his ninth point, Murkledove argues that the trial court erred by overruling his objections to the admission of his handwritten statements on photographs of the exteriors of three houses admitted as State's Exhibits 9, 10, and 11. He argues that the statements were not made voluntarily and that they violate code of criminal procedure article 38.22's requirement that certain warnings and a waiver of those warnings appear on the face of the statements.[3] *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West Supp. 2013).

We need not determine whether the trial court erred by admitting the handwritten statements on State's Exhibits 9, 10, and 11 because even assuming error, we hold that any error was harmless under the standard for constitutional error.[4] *See* Tex. R. App. P. 44.2(a); *Kane*, 173 S.W.3d at 594

---

[3]Murkledove raised these issues in a pretrial motion to suppress, but after a hearing on the issues, the trial court deferred ruling on them. When the State offered those exhibits at trial, Murkledove reurged his objections, which the trial court overruled. Thus, Murkledove properly preserved this issue for appeal. *See* Tex. R. App. P. 33.1(a).

[4]The trial court did not make written findings on the voluntariness issue, but because we assume error and find no harm, we need not abate for findings on voluntariness. *See Randle v. State*, No. 10-11-00117-CR, 2013 WL 1188647, at *5–6 (Tex. App.—Waco Mar. 21, 2013, pet. ref'd) (mem. op., not designated for publication) (assuming statement involuntary when no voluntariness hearing held and conducting harm analysis); *Kane v. State*, 173 S.W.3d 589, 594 (Tex. App.—

18

(applying rule 44.2(a) to error in admitting involuntary statement). In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). We "should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment,'" and if applicable, we may consider the nature of the error, the extent that it was emphasized by the State, its probable collateral implications, and the weight a juror would probably place on the error. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011) (quoting Tex. R. App. P. 44.2(a)). This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution." *Harris v. State*, 790

---

Fort Worth, 2005, no pet.) (same); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (requiring specific fact findings by trial court when question of voluntariness of statement raised); *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) (mandating abatement to trial court for findings on voluntariness when issue raised at trial).

19

S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

The statements at issue here were handwritten by Murkledove on photographs of three separate houses. On State's Exhibit 9, Murkledove wrote that the assault rifle was left at the house in the photograph, the lock box was broken open there, and that Jones may have given some purses to his grandmother who lives there. On State's Exhibit 10, Murkledove wrote that the house in the photograph belonged to Jones's mother and was where Murkledove had last seen the tire rims and the rest of the purses; Murkledove also wrote that the murder weapon "might be a couple houses down under the mattress or in his car." Murkledove wrote on State's Exhibit 11 that the house in the photograph was possibly where Jones traded the TV and Xbox for marijuana and money.

After making the complained-of written statements on the photographs, Murkledove gave a detailed written statement, in which he stated that he discussed breaking into Garner's house with Jones the night before Garner's murder, that he arranged transportation to Garner's house the following day so that he and Jones could steal Garner's property, that Jones brought a gun with him and said that if Garner was there, he would have to kill him, and that Murkledove entered the house with Jones and stole property from inside after Jones shot and killed Garner. In that statement, admitted as State's Exhibit 8A, Murkledove also explained that after the break-in, they hid the stolen rifle and opened the lockbox of pills at Jones's grandmother's house, they sold the TV at

20

another house, and Jones took the murder weapon home with him. Murkledove stated that Jones usually kept his gun in his house, which is down the street from his grandmother's house, or in his car. Murkledove does not challenge the admissibility of that statement on appeal.[5]

The handwritten statements on the photographs of the houses tended to corroborate the most compelling evidence of the State's case—Murkledove's written statement admitted as State's Exhibit 8A. But other unobjected-to evidence at trial also showed that Murkledove directed police to three houses and, upon execution of search warrants on those houses, corroborated Murkledove's written statement about the location of the stolen property. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.") (quoting *Crocker v. State*, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978)). At trial, Detective Shane Drake with the Fort Worth Police Department testified without objection that he and another detective drove Murkledove by three houses pointed out by Murkledove and later prepared search warrants for those houses. Execution of those warrants revealed some of the items stolen from Garner's house.

---

[5]Murkledove also made several other written and oral statements prior to making the written statements on State's Exhibits 9, 10, and 11 in which he admitted involvement in the break-in of Garner's house; he does not challenge the admissibility of those statements on appeal.

We cannot say that the admission of State's Exhibits 9, 10, and 11 moved the jury from a state of nonpersuasion to one of persuasion as to Murkledove's guilt for the offense of capital murder. *See Wesbrook*, 29 S.W.3d at 119; *see also Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007) (stating that factors to consider in harm analysis are how important the evidence was to State's case, whether evidence was cumulative of other evidence, and whether other evidence corroborated complained-of evidence on material points). Thus, assuming error and performing a harm analysis under rule 44.2(a), we hold beyond a reasonable doubt that any error did not contribute to Murkledove's conviction.[6] *See* Tex. R. App. P. 44.2(a).

We overrule Murkledove's ninth point.

## VI. LIFE WITHOUT PAROLE PUNISHMENT

In his tenth point, Murkledove argues that his mandatory life sentence without parole constitutes cruel and unusual punishment under both the United States and Texas constitutions because he had just turned eighteen two months

---

[6]Because we hold that any error was harmless under the heightened standard of rule 44.2(a), we need not analyze whether any error in admitting those same statements in violation of code of criminal procedure article 38.22 violated Murkledove's substantial rights under rule 44.2(b). *See* Tex. R. App. P. 44.2(b), 47.1; *see also Woods v. State*, 152 S.W.3d 105, 118 (Tex. Crim. App. 2004) (stating that the erroneous admission of an appellant's statement in violation of article 38.22 amounts to nonconstitutional error), *cert. denied*, 544 U.S. 1050 (2005).

before the offense and because he was convicted as a party to, not the perpetrator of, capital murder.[7]

The Supreme Court has held that a mandatory life sentence without the possibility of parole for defendants under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition of cruel and unusual punishment. *Miller v. Alabama*, 132 S. Ct. 2455, 2463, 2469 (2012). But Murkledove had turned eighteen two months prior to Garner's murder so *Miller* does not apply here. Murkledove was subject to Texas's statutorily-mandated sentence of life without parole, which applies to individuals who commit offenses when they are eighteen years of age or older. *See* Tex. Penal Code Ann. § 12.31(a)(2); Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2013).

Additionally, although the Supreme Court has held that the Eighth Amendment encompasses an individualized sentencing doctrine that precludes mandatory sentencing in cases in which the death penalty is sought, that is not the case for non-death-penalty sentencing, even life without parole. *See Harmelin v. Michigan*, 501 U.S. 957, 994–95, 111 S. Ct. 2680, 2701–02 (1991). Texas courts have consistently held that the mandatory life sentence required under section 12.31(a) of the penal code and article 37.071, section 1 of the code of criminal procedure is not unconstitutional as cruel and unusual punishment under the Eighth Amendment and article I, section 13 of the Texas constitution.

---

[7]Murkledove filed a pretrial motion on this issue, which the trial court denied, and raised the issue in his amended motion for new trial.

*Cienfuegos v. State*, 113 S.W.3d 481, 495 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (collecting cases); *see Slater v. State*, No. 02-11-00368-CR, 2013 WL 2631194, at *6 (Tex. App.—Fort Worth June 13, 2013) (mem. op., not designated for publication), *pet. ref'd*, 408 S.W.3d 876 (Tex. Crim. App. 2013). This is true when the defendant has been convicted of capital murder under the theory of party liability set forth in penal code section 7.02(b). *Battle v. State*, 348 S.W.3d 29, 31 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Cienfuegos*, 113 S.W.3d at 496. As we have previously stated, "It is well settled that a mandatory life sentence for the offense of capital murder is not unconstitutional." *Barnes v. State*, 56 S.W.3d 221, 239 (Tex. App.—Fort Worth 2001, pet. ref'd), *abrogation on other grounds recognized by Hurd v. State*, 322 S.W.3d 787, 793 n.5 (Tex. App.—Fort Worth 2010, no pet.).

Because Murkledove committed the offense after he turned eighteen years of age and because a mandatory life sentence for capital murder is not unconstitutional, we overrule Murkledove's tenth point.

## VII. CONCLUSION

Having overruled Murkledove's ten points on appeal, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

24

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: May 15, 2014