**Affirmed and Memorandum Opinion filed February 19, 2015.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-13-00900-CR

---

### LAKENDRICK EARL JACOBS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1289471**

---

## M E M O R A N D U M   O P I N I O N

Following a jury trial, appellant Lakendrick Earl Jacobs was found guilty of capital murder. The trial court assessed punishment at life imprisonment without parole. In this appeal, Jacobs contends that the trial judge erred by denying his request for a jury instruction on the law of independent impulse and that the evidence was legally insufficient to support a guilty verdict. We affirm.

BACKGROUND

On November 10, 2010, Jacobs and a group of men decided that they wanted to rob someone. The group of men drove around until they pulled up to an intersection located at 6200 Sayers Street, Houston, Texas. The group stopped near a Nissan Sentra, which was being driven by the complainant, Euland Laster. Jacobs was carrying a .22 caliber rifle and his friend, Mark Tillman, was holding a hammer. The men exited their vehicle and Tillman yelled at Laster to give them his wallet. Laster was a sixty-five-year-old man and used a cane. Because he had previously suffered a stroke and had endured six hip replacement surgeries, Laster was unable to move quickly enough when Tillman yelled at him.

Tillman began striking Laster with the hammer. At trial, the medical examiner testified that Tillman struck him at least ten times in his head and torso. Although Jacobs was present, he did not touch Laster and never held the hammer. The medical examiner testified that Laster died from a combination of blunt force trauma and blood loss.

The group took Laster's wallet, containing his credit cards and cash, and Tillman stole Laster's Nissan Sentra. Officer Dan Arnold testified that the next day, he received a phone call that Laster's credit card was being used at several gas stations in the area. Officer Arnold interviewed the evening shift manager at a nearby gas station, who stated that two customers used the credit card and were acting suspiciously that night. After reviewing the surveillance video, the manager identified the customers as Mark Tillman and Cedric Abram, who was later identified as Jacobs's brother.

On November 16, 2010, the police interviewed Timka Carper, a woman who called the police to discuss the case. Carper stated that on November 11, the day after Laster was killed, Jacobs came over to her house. Jacobs drove the stolen

Nissan Sentra to Carper's house and offered to sell it to her for $800. Carper asked him where he got the car and Jacobs responded that it was a long story, but that he would tell her later. Jacobs left Carper's house in the Nissan Sentra.

Later that day, Carper was driving to the store with a friend and decided to stop at Jacobs's house because he was standing outside in the front yard. Carper again asked him where he got the car and Jacobs stated that they went out robbing the night before and stole the car, along with $30 and credit cards. Jacobs told Carper that he was holding a gun and committed the robbery with Tillman. Jacobs also said that Tillman beat Laster with a hammer, but he did not know whether Laster had died. Carper then allowed Jacobs to borrow her cell phone and Jacobs called several people. Jacobs found out that Laster died and started to panic. Jacobs went inside his house to pack and came outside carrying the gun he used during the robbery. Jacobs also admitted to Carper that he abandoned the Nissan Sentra in Trotter Park earlier that day. The police discovered the vehicle in Trotter Park on November 12, but could not find the rifle or hammer used in the robbery.

After speaking to Carper, Tillman, Tillman's family members, and another suspect, the police interviewed Jacobs on December 17. Jacobs confessed to the robbery, but stated that he did not intend for anyone to get hurt and that hitting Laster was Tillman's idea. Jacobs also explained that he only held the gun to scare Laster into cooperating. Jacobs claimed that he did not know Tillman was carrying a hammer. On December 20, Jacobs was charged by indictment with capital murder. Jacobs pleaded not guilty. The case proceeded to trial and the jury returned a guilty verdict on October 10, 2013. The trial court assessed punishment at life imprisonment without parole.

## ISSUES AND ANALYSIS

In two issues on appeal, Jacobs contends that the trial judge erred by

denying his request for an independent impulse instruction and that the evidence was legally insufficient to convict him as a party on the charge of capital murder.

## I. Independent Impulse

In his first issue, Jacobs asserts that the trial court erred by failing to submit his requested instruction on independent impulse to the jury.

The purpose of the jury charge is to inform the jury on the applicable law and guide the jury in its application of the law to the facts of the case, and the trial judge is ultimately responsible for the charge's accuracy. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). In reviewing a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The trial judge is required to instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208−09 (Tex. Crim. App. 2007).

Jacobs contends that the trial court erred by denying his request for a jury instruction on independent impulse. Jacobs argues that he was entitled to an instruction on independent impulse because the evidence established that although he intended to commit the robbery, he did not intend to commit capital murder because he did not anticipate that Tillman would kill Laster.

The theory behind an independent impulse instruction is that, although the defendant had agreed to participate in some form of offense rising to the level of a felony, the offense for which he is being prosecuted arose from an independent impulse. *See Mayfield v. State*, 716 S.W.2d 509, 515 (Tex. Crim. App. 1986), *overruled by Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001); *see*

*also Murkledove v. State*, 437 S.W.3d 17, 24 (Tex. App.—Fort Worth 2014, pet. dism'd). The trial court must instruct the jury on properly requested statutory defenses raised by the evidence. *Walters*, 247 S.W.3d at 208−09. However, a defense that is not recognized by the legislature in the relevant statute as a defense or as an affirmative defense does not warrant a separate instruction. *Giesberg v. State*, 984 S.W.2d 245, 248−51 (Tex. Crim. App. 1998). Independent impulse is not listed as a statutory defense in the Texas Penal Code. *Solomon*, 49 S.W.3d at 368.

In *Solomon*, the Court of Criminal Appeals reasoned that the defendant was not entitled to an instruction on independent impulse because "there is no enumerated defense of 'independent impulse' in the Penal Code" and that the defense "would simply negate the conspiracy liability element of the State's case." *Id*. The court further stated that including an instruction on independent impulse would be superfluous and an impermissible comment on the weight of the evidence. *Id*. (citing *Giesberg*, 984 S.W.2d at 250). The court held that all that is required is for the "appropriate portions of the jury charge to track the language of § 7.02(b)." *Id*.

Here, the charge instructed the jury:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

The jury charge tracked the language of Texas Penal Code § 7.02(b), as required by *Solomon*. Jacobs's proposed independent impulse instruction would simply negate the conspiracy liability element of the State's case. Therefore, the trial court

did not err by denying Jacobs's request for an instruction on independent impulse.

We overrule Jacobs's first issue regarding independent impulse.

## II. Legal Sufficiency

In his second issue, Jacobs contends that the evidence is legally insufficient to support his conviction as a party to capital murder. Jacobs argues that he cannot be convicted under the conspiracy theory of the law of parties because the killing was not done in furtherance of the robbery and because it was an unanticipated killing.

In reviewing a sufficiency question, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). When conducting this review, we do not reevaluate the weight and credibility of the evidence, but act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

The jury is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise, reconciliation of conflicts in evidence is within the exclusive province of the jury. *Jones*, 944 S.W.2d at 647. When the record supports conflicting inferences, we presume the trier of fact resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Because Jacobs was charged under the law of the parties, he could only be found criminally responsible for the murder if, as the jury was instructed, Laster was killed in the attempt to carry out the conspiracy to commit robbery, and if such

6

murder was in furtherance of it and should have been anticipated by Jacobs. *See Flores v. State*, 681 S.W.2d 94, 96 (Tex. App.—Houston [14th Dist.] 1984), *aff'd*, 690 S.W.2d 281 (Tex. Crim. App. 1985). Jacobs contends that the evidence is legally insufficient to convict him under the conspiracy theory of the law of the parties because (1) the murder was not done in furtherance of the conspiracy because at the time of the killing, the robbery had already been completed, and (2) the murder could not have been anticipated because it was an "unprovoked and unanticipated" killing.

Jacobs first contends that he cannot be convicted under this theory because the objective of the conspiracy had already been accomplished when Tillman killed Laster. Jacobs admitted to the police that he conspired with the group of men to commit the robbery and that he brought a rifle in order to scare Laster into cooperating with them. The evidence at trial demonstrated that when Laster did not comply quickly enough, Tillman began striking him with the hammer. The group stole Laster's wallet containing his cash and credit cards and Tillman drove off in his Nissan Sentra. Jacobs attempted to sell the stolen Nissan Sentra the following day and then abandoned the vehicle upon learning that Laster died.

In viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that the murder was completed in furtherance of the conspiracy to commit the robbery. Tillman committed the murder during the commission of the robbery and at the time of the killing, the robbery had not yet been completed.

Jacobs further asserts that this was an "unprovoked and unanticipated brutal assault" by Tillman. Jacobs, Tillman, and the others agreed in advance to drive around and rob someone. Jacobs brought a rifle in order to intimidate Laster and Tillman brought a hammer. Although Jacobs alleges that he did not know Tillman

7

was carrying a hammer, the jury could have reasonably inferred that Jacobs saw Tillman with a hammer before the robbery occurred. However, even if Jacobs did not know Tillman brought a hammer, a killing could have been anticipated because Jacobs brought a rifle to the robbery.

Because both Jacobs and Tillman brought deadly weapons to the robbery, a rational trier of fact could have found that murder should have been anticipated as a possible result of the robbery. *See Fuller v. State*, 827 S.W.2d 919, 932, 933 n.14 (Tex. Crim. App. 1992) (holding that murder should have been anticipated because defendant brought a knife to the burglary and he knew his co-conspirator "usually would have had a knife in that situation"); *Naranjo v. State*, 745 S.W.2d 430, 434 (Tex. App.—Houston [14th Dist.] 1988, no pet.) (holding that murder should have been anticipated because defendant knew his co-conspirators had an ice pick and pistol); *Flores*, 681 S.W.2d at 96 (holding that murder should have been anticipated because the defendant knew his co-conspirator brought a gun to the burglary).

We overrule Jacobs's second issue regarding the legal sufficiency of his conviction.

**CONCLUSION**

We hold that the trial judge did not err by denying Jacobs's requested instruction on independent impulse and that the evidence was legally sufficient to support his conviction. Accordingly, we affirm the judgment of the trial court.

/s/    Ken Wise
         Justice

Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

9