

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00139-CR

_____

TIMOTHY KION HUFF, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1707472R

---

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

The State tried Appellant Timothy Kion Huff for committing a murder while committing or attempting to commit a robbery—capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2). The State presented evidence over five days, after which the jury—deliberating for about an hour—found Huff guilty of capital murder.

Because the State sought the death penalty, Huff faced a punishment of life imprisonment without parole or death. *See id.* § 12.31(b). The punishment trial spanned another three days. After deliberating about seven hours, the jury unanimously found beyond a reasonable doubt that

- there was a probability Huff would commit criminal acts of violence that would constitute a continuing threat to society, and

- Huff anticipated a human life would be taken.

But by a vote of at least ten jurors, the jury further found that

- taking into consideration all the evidence, including the offense's circumstances, Huff's character and background, and Huff's personal moral culpability, a sufficient mitigating circumstance or sufficient circumstances warranted imposing a life-imprisonment-without-parole sentence rather than a death sentence.

In accordance with the jury's verdict, the trial court sentenced Huff to life in prison without parole. *See id.* § 12.31.

Huff appealed. On appeal, Huff raises two issues. He argues that

1. [t]he trial court's jury charge [o]n guilt/innocence caused [him] egregious harm by permitting a guilty verdict for a crime not charged in the indictment[, and]

2. [t]he evidence is insufficient to hold [him] complicit as a party to a capital murder committed by another person while he was under arrest.

We overrule both issues and affirm the trial court's judgment.

## II. EVIDENTIARY SUFFICIENCY

Because Huff's second issue, his sufficiency complaint, would result in greater relief if granted, we address it first. *See Mixon v. State*, 481 S.W.3d 318, 322 (Tex. App.—Amarillo 2015, pet. ref'd).

In Huff's second issue, he contends that he was already under arrest when the murder occurred. According to Huff, his arrest effectively terminated his participation in any criminal wrongdoing, so the evidence is necessarily insufficient to show that he was a party to the capital murder. We are not persuaded.

### A. STANDARD OF REVIEW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

3

inferences from basic facts to ultimate facts.  *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility.  *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021).  We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.  *Queeman*, 520 S.W.3d at 622.  Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict.  *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence.").  We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution.  *Braughton*, 569 S.W.3d at 608.

## B. DISCUSSION

Huff's focus is misplaced.  The question is not whether his arrest terminated his participation in the offense.  Rather, the question is whether the murder was committed in furtherance of the robbery and whether that murder should have been anticipated as a result of carrying out the conspiracy to commit the robbery.  *See* Tex. Penal Code Ann. § 7.02(b).  Huff's ability to promote the offense might have ended, but the consequences for his participation in the offense had not.

4

### 1. When Engaging in Armed Robbery or When Fleeing from an Armed Robbery, Conspirators Should Anticipate the Possibility of a Murder Occurring.

Case law bears out that the focus is on what Huff should have anticipated when he and his other conspirators engaged in armed robbery. Evidence that a defendant knew his co-conspirators might use guns when committing a robbery can be sufficient to show that the defendant should have anticipated the possibility of a murder occurring during the robbery. *Gittens v. State*, 560 S.W.3d 725, 736 (Tex. App.—San Antonio 2018, pet. ref'd) (stating that jury could have reasonably determined that defendant should have anticipated someone could be killed because firearms were used during robbery); *Love v. State*, 199 S.W.3d 447, 454 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Similarly, fleeing and using force to escape are acts that a co-conspirator should contemplate when committing an armed robbery. *See Ford v. State*, 507 S.W.2d 735, 736 (Tex. Crim. App. 1974) (stating that when a conspirator kills someone while trying to escape, the other conspirators should have reasonably contemplated that death and are thus all criminally responsible).

### 2. Abundant Evidence Supports the Implied Finding.

The evidence showed that three masked and armed robbers entered a bar and ordered everyone to get down. The bartender said that one of the robbers pointed a gun at her uncle's (the bar owner's) head. One patron described a robber waiving a gun in his face, hitting him in the head with a pistol, and pushing him to the ground. A second patron testified that a robber put a gun to her brother-in-law's head and to

5

her husband's back. A third patron said that the robbers pointed guns at everyone there and told them to lie down. And a fourth patron related that a robber held a gun up to his face and that when the robber later pushed him, he felt a gun on the back of his head.

But what the bartender and none of the patrons knew—and, indeed, what the robbers themselves did not know—was that the police had the bar surrounded. The police had been investigating a string of robberies conducted by a group of individuals targeting Hispanic persons or locations. The police called these individuals the Cantina Bandits. An investigating detective estimated the previous number of robberies at ten.[1]

From these previous robberies, the police had several videos that helped them identify a suspect vehicle, which the police then proceeded to track. Consequently, when the suspect vehicle picked up two passengers and went to a Hispanic bar, the police surrounded the bar. Rather than risk a confrontation inside the bar, the police waited for the robbers to exit.

Regarding the decision not to confront the robbers inside the bar, the police knew from the prior robberies that these robbers were well organized and violent. A detective provided several examples:

---

[1]Because Huff does not dispute identity for this offense or for any of the other ten offenses, we dispense with describing how the police linked all the robberies to the same robbers.

6

- During one robbery, a robber knocked a bar owner unconscious.

- In another instance, one of the robbers fired his gun.

- In a third instance, one of the robbers shot the victim in the back.

- In a fourth instance, a home invasion, one of the robbers pointed a gun at a pregnant woman's stomach and told her he would shoot her there if she did not comply; the robbers also pointed a gun at the pregnant woman's four-year-old daughter.

In addition to the detective's summary of the earlier offenses, the jury heard the testimony of numerous prior victims. One victim described getting kicked in the chest or face and losing consciousness. Another victim said that he was pistol-whipped in the face, that the blow split his lip wide open, and that the injury required getting a tooth implant. The pregnant woman that the detective referred to said that the robbers were dissatisfied with their haul and threatened to kill her four-year-old daughter unless they gave the robbers more money. Another victim saw a robber dragging a woman by the hair; someone then hit the victim with a pistol, knocking him unconscious. This victim said that the bar's patrons fled the bar, and one of the robbers fired his gun twice. He thought someone had been killed, but the detective did not mention a death or even a wounded person associated with this incident. The man shot in the back was at his home; he was shot in the back when he ran to warn his friends.

In any event, after the robbery, Huff exited the bar and—in short order—encountered the officers assigned to watch the suspect vehicle. Huff surrendered himself peacefully.

The two other robbers, however, tried to escape on foot. A police chase ensued.

About sixty seconds after the police arrested Huff, one of the robbers—Dacion Steptoe—shot a pursuing officer in the head. That officer died.

Steptoe then pointed his gun at a second pursuing officer, but that officer shot Steptoe first, causing Steptoe to fall. Despite a third pursuing officer arriving at the scene and despite orders to drop his gun, Steptoe refused and tried to regain his feet, so the two officers shot Steptoe again, killing him.

As for the third robber, Samuel Mayfield, while fleeing, he had broken a doorframe so he could enter a garage and hide. The police, however, when seeing the broken doorframe, recognized that someone had made a forced entry, and—given the circumstances—they decided to further investigate the garage. Just as the officer holding the ballistic shield began to go inside, Mayfield ran out of the building and surrendered peacefully.

When a detective later interviewed Huff, Huff said, "[W]hen you go into a bar like that, there might be a whole bunch of people with guns . . . ." Based on that comment, the detective opined that Huff had anticipated the possibility of gunfire.

Based on the above evidence, we hold that a rational juror could have found beyond a reasonable doubt that (1) Huff was part of a conspiracy to commit a robbery during which one of his co-conspirators committed the offense of murder and (2) the murder was committed in furtherance of the armed robbery and was an offense that Huff should have anticipated resulting from the armed robbery. *See* Tex. Penal Code Ann. § 7.02(b); *Ford*, 507 S.W.2d at 736; *Gittens*, 560 S.W.3d at 736; *Love*, 199 S.W.3d at 454. The evidence was thus sufficient to find Huff guilty of capital murder as a party under Section 7.02(b).

We overrule Huff's second issue.

### III. CHARGE COMPLAINT

In Huff's first issue, he contends that the indictment does not allege that he engaged in any conspiracy. He thus concludes that the inclusion of any conspiracy-theory in the court's charge constituted egregious harm. We disagree.

The State's theory was that the victim was murdered during the course of a robbery, which constitutes the offense of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(2). Huff himself, however, was not the shooter. Thus, Huff was guilty of capital murder, if at all, as a party. To establish that Huff was a party to the capital murder, the State argued that (1) Huff was part of a conspiracy to commit a robbery during which one of the co-conspirators committed the offense of murder and (2) the murder was committed in furtherance of the armed robbery and was an offense that

9

Huff should have anticipated resulting from the armed robbery. *See id.* § 7.02(b). In other words, Huff was guilty of capital murder as a party under Section 7.02(b).

## A. STANDARD OF REVIEW

Huff did not object to the charge on this basis. Despite that, we must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When reviewing a jury charge, we first determine whether error occurred. *Id.* If no error occurred, our analysis ends. *Id.* As discussed below, we conclude no error occurred.

## B. LAW OF PARTIES

A defendant may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. Tex. Penal Code Ann. § 7.01(a); *Murkledove v. State*, 437 S.W.3d 17, 21 (Tex. App.—Fort Worth 2014, pet. ref'd). How a defendant may become a party based on "the conduct of another for which he is criminally responsible" is set out in Section 7.02 of the Texas Penal Code. *See* Tex. Penal Code Ann § 7.02.

Under Section 7.02(a)(2), a defendant may be found guilty as a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Murkledove*, 437 S.W.3d at 22.

And under Section 7.02(b), a defendant may be found liable as a party if he acted as a co-conspirator to one felony during the commission of which a different

felony was committed—provided the different felony "was one that should have been anticipated as a result of the carrying out of the conspiracy."[2] Tex. Penal Code Ann. § 7.02(b). Under Section 7.02(b), the conspiracy language is not used to allege the commission of a conspiracy offense under Section 15.02 of the Texas Penal Code but is used to allege a defendant's liability as a party to an offense alleged in the indictment. *Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 22–23; *see* Tex. Penal Code Ann. § 15.02 ("Criminal Conspiracy").

The law of parties may be applied to a case even though the indictment contains no such allegation. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989); *Murkledove*, 437 S.W.3d at 21–22. Thus, if the charge used the conspiracy language in the context of the law of parties, *see* Tex. Penal Code Ann. § 7.02(b), and not in the context of committing an offense, *see id.* § 15.02, its absence in the indictment is immaterial. *See Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 22–23.

---

[2]Specifically, Section 7.02(b) provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

Tex. Penal Code Ann. § 7.02(b).

11

## D. DISCUSSION

Here, the abstract portion of the court's charge included instructions on the law of parties from both subsections (a) and (b) of Section 7.02. It also included a definition of the term "conspiracy" as follows: "'Conspiracy' means an agreement between two or more persons, with intent that a felony be committed, that they, or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from the acts of the parties." This definition is borrowed from the statute addressing conspiracy as an offense. *See* Tex. Penal Code Ann. § 15.02(a), (b). Consequently, the concepts of conspiracy as a basis for party liability and conspiracy as a separate criminal offense are commingled.

Proceeding to the application portion of the court's charge, it authorized Huff's conviction for capital murder under the law of parties as set forth in Section 7.02(a) or Section 7.02(b). Specifically, the charge instructed the jury:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of September, 2018, in the County of Tarrant, State of Texas, the Defendant, Timothy Kion Huff, did intentionally, acting alone or as a party, as that term has been hereinbefore defined, cause the death of [the victim], by shooting him with a firearm, and the said defendant was in the course of committing or attempting to commit the offense of robbery, or if you find from the evidence beyond a reasonable doubt that the Defendant, Timothy Kion Huff, entered into an agreement with two or more persons to commit the offense of robbery, as defined above, and pursuant to that agreement, they did carry out their conspiracy and that on or about the 14th day of September, 2018, in Tarrant County, Texas, while in the course of committing such robbery, Dacion Steptoe intentionally caused the death of [the victim] by shooting him with a firearm, if he did, and that the Defendant, pursuant to the conspiracy, if any, with the intent to promote and assist Dacion Steptoe

12

in the commission of said robbery, if any, was then and there acting with and aiding or attempting to aid Dacion Steptoe in the execution of the robbery, if any, and that the shooting of [the victim] was committed in furtherance of the conspiracy, if any, to commit the robbery, if any, and that the shooting of [the victim], if any, was an offense that should have been anticipated as a result of the carrying out of the conspiracy, then you will find the Defendant guilty of the offense of capital murder, as charged in the indictment.

When faced with a jury charge that was almost identical to the one at issue here, the Texas Court of Criminal Appeals rejected the same argument that Huff advances. *See Montoya*, 810 S.W.2d at 164–65; *Murkledove*, 437 S.W.3d at 22–23. In *Montoya*, the court rejected the appellant's argument that the inclusion of the conspiracy theory in the court's charge erroneously allowed the jury to consider whether he was guilty of the separate offense of criminal conspiracy under Section 15.02 of the Texas Penal Code. *Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 22–23. Rather, the court held that the charge, which also defined the term "conspiracy," "merely contained an alternative 'parties' charge as provided in . . . Section 7.02(b)." *Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 23; *see also English v. State*, 592 S.W.2d 949, 954 (Tex. Crim. App. 1980) (noting that section 7.02(b) "does not address itself to the offense of conspiracy").

Contrary to Huff's argument, applying Section 7.02(b) and including the definition of the term "conspiracy" from Section 15.02 did not permit the jury to convict him of capital murder if it first found him guilty of a conspiracy offense. *See Murkledove*, 437 S.W.3d at 23. Instead, the charge properly allowed the jury to find

13

Huff guilty of capital murder under the law of parties. *See id.* As the Texas Court of Criminal Appeals wrote over forty years ago, "The court's charge did not authorize the jury to convict appellant if it found that the murder was committed during the course of a conspiracy to rob [the deceased]. . . . The jury was required to find that appellant was a party to the offense of capital murder as designated by Section 19.03(a)(2) . . . ." *English*, 592 S.W.2d at 954.

The concepts of conspiracy as an offense under Section 15.02 and as a party under Section 7.02(b) are identical, but their uses are distinct. Here, the conspiracy language was used as a basis for criminal responsibility for another's conduct under Section 7.02(b). Because the charge used the conspiracy language as a basis for party liability to capital murder, the language did not have to appear in the indictment. *See Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 21–22.

We overrule Huff's first issue.

## IV. CONCLUSION

Having overruled Huff's two issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 25, 2023

14