

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00242-CR

---

TYRONE JENKINS A.K.A. TYRONE
SMITH

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2012-0484-B

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Tyrone Jenkins, also known as Tyrone Smith, of capital murder in the course of robbery, and the trial court imposed the mandatory life sentence. Appellant brings four points on appeal, challenging the sufficiency of the evidence, the trial court's exclusion of testimony recounting an

---

[1]*See* Tex. R. App. P. 47.4.

out-of-court statement by co-defendant Markell Hardy, the denial of Appellant's motion for new trial, and the trial court's failure to instruct the jury on the lesser offense of felony murder. Appellant does not otherwise raise charge error. Because the evidence is sufficient to support Appellant's conviction and because the trial court committed no reversible error raised by Appellant in his brief, we affirm the trial court's judgment.

**Summary of Facts**

Around midnight on December 20, 2011, someone shot drug dealer Trevor Kronbach in the back of his head at close range inside his apartment and stole the drugs and guns he kept there. Markell Hardy, a friend of Appellant, was living with Crystal George in the InTowne Suites motel. On December 19, Appellant and two other men came by Hardy and George's motel room. George, who was sick and smoking marijuana, went into the bathroom to avoid the men. She claimed that she heard Appellant excitedly saying, "We're gonna get him, we're gonna get him." George saw Appellant wearing sweat pants, and she saw a black gun sticking out from the side of his pants. She denied seeing anyone else with a gun. After fifteen to twenty-five minutes, Appellant, Hardy, and the other men left the motel room.

That same evening, Kronbach's neighbors, a married couple, heard a couple of loud bangs, loud talking, and moving in Kronbach's apartment, and they also heard someone running up and down the apartment stairs inside his apartment. The wife went to her window and saw a man in red sweatpants and a

2

red cap walking from Kronbach's apartment. He yelled at someone else to "hold up." She went back to bed, and fifteen minutes later, she heard Kronbach's girlfriend screaming outside the apartment. Kronbach had sent his girlfriend to the QuikTrip to deliver methamphetamine to Hardy, who had never shown up. When she returned to the apartment, she found Kronbach, shot in the head.

George testified that Hardy and his friends returned to the motel with a white box containing drugs and a green bag containing guns. Appellant fled to Mississippi, where he was later found by a SWAT team.

**Sufficiency of the Evidence**

In his first point, Appellant challenges the sufficiency of the evidence that he committed capital murder, in part by arguing that there was no agreement. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

Appellant's argument underscores the problems created when the Texas Court of Criminal Appeals in *Montoya v. State*[8] used language that has resulted in confusion over the difference between the law of parties and the offense of conspiracy.[9] If section 7.02(b) of the penal code is, indeed, an alternative law of

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[8]810 S.W.2d 160, 165 (Tex. Crim. App. 1989), *cert. denied*, 502 U.S. 961 (1991).

[9]*See, e.g., Ladd v. State*, 3 S.W.3d 547, 565 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000); *Murkledove v. State*, 437 S.W.3d 17, 21–22 (Tex. App.—Fort Worth 2014, pet. dism'd); *Brosky v. State*, 915 S.W.2d 120, 139–40

parties, as the *Montoya* court and subsequent courts have held,[10] then by its clear language, it does require an agreement, as Appellant argues. But the trial court in the case now before us, as so many trial courts have done since *Montoya*, instructed the jury on the definition of conspiracy, stating that a conspiracy means an agreement between two or more persons with the intent that a felony be committed. In one of the application paragraphs, the trial court instructed the jury to convict Appellant of capital murder if they found from the evidence beyond a reasonable doubt that he was guilty of conspiracy to commit capital murder. We note that conspiracy to commit capital murder is a separate offense with a punishment level one level below capital murder,[11] but we do not address that particular problem because it is not before us.

The trial court clearly instructed the jury that an agreement was required. And, if the law of parties is as has been stated since *Montoya*, then courts have added an element to the law of parties that increases the State's burden by requiring the State to prove an agreement to commit the underlying felony, here,

(Tex. App.—Fort Worth), *cert. denied*, 519 U.S. 1020 (1996); *Ex parte Brosky*, 863 S.W.2d 783–84 (Tex. App.—Fort Worth 1993, no pet.).

[10]*See, e.g.*, *Montoya*, 810 S.W.2d at 165; *Murkledove*, 437 S.W.3d at 21–22.

[11]*See* Tex. Penal Code Ann. § 15.02(d) (West 2011); *Murkledove*, 437 S.W.3d at 23 n.2.

robbery.[12] But trial counsel made no objection to the conspiracy instruction, and it is not a charge issue on appeal.

Russell Scales and Crystal George both testified for the prosecution. Appellant points to the weakness of George as a witness: she lied to the police, and she was high on drugs. She testified that Appellant acted "hyped-up"; said, "We're gonna get him"; was wearing sweat pants; and was the only person in the apartment she saw carrying a gun. When Appellant and the other men returned to the apartment, they had a white box and a green bag. The white box contained drugs. Later that evening, George saw guns in the green bag in the car trunk.

George's testimony, if believed, was some evidence that Appellant participated in planning the robbery and accompanied Hardy and the others when they left the motel. It is also some evidence that he jointly possessed the drugs and weapons taken from Kronbach.

Scales grew up with Hardy and met Appellant through Hardy. He also bought drugs from Kronbach. Sometime after 2:30 a.m. the day Kronbach was killed, Hardy brought Kronbach's weapon collection to Scales's house. The weapons were in the trunk of a champagne-colored car. Scales described Hardy as looking scared—like he'd seen a ghost. Scales described the car's driver as looking nonchalant. Appellant was not in the car. Scales told Hardy that he did

---

[12] *See Murkledove*, 437 S.W.3d at 33–34 (Dauphinot, J., dissenting).

not want Hardy and the men with him to leave the guns at his house, but the driver promised to return for them in half an hour. Scales testified that he felt threatened after talking with the driver.

Hardy and his friends never came back for the weapons, so around 8:00 a.m., Scales went to Hardy's motel room looking for the men. Scales told Hardy to get the weapons out of his garage, or he would call the police. Hardy gave Scales $20 for gas, but when Scales went to the gas station, a police officer arrested him for driving with a suspended license. At the police station, detectives questioned Scales. Eventually, he told them about the guns and gave his consent to search his car and home.

Finally, the State presented an audio recording of an oral statement of Appellant's that was admitted without objection. In the statement, he admitted going to Kronbach's apartment, although his explanation of the purpose for going to the apartment was not clear. On the one hand, Appellant said he went to Kronbach's apartment because Hardy wanted to get drugs. On the other hand, Appellant said that Hardy wanted to kill Kronbach and that he thought that idea was crazy. In any event, Appellant admitted that he went to Kronbach's apartment door with Hardy, knowing Hardy was carrying a gun, and that Hardy shot and killed Kronbach. Appellant denied that he knew that Hardy was going to kill Kronbach. Appellant indicated that he knew that Hardy would claim that Appellant, not Hardy, shot Kronbach. Appellant also admitted that he was wearing a black t-shirt and a black or red stocking cap at the time of the murder.

7

It is difficult to understand what pants he said he was wearing. But his statement corroborated Kronbach's neighbor's description of one of the men she saw leaving Kronbach's apartment after the gunshots.

The evidence, then, shows that

- Appellant wore sweat pants, a black t-shirt, and a red or black stocking cap and that one of the men who left Kronbach's apartment after a gunshot also wore sweat pants and a red cap;

- Appellant had a gun at Hardy's motel room;

- Appellant said, "We're gonna get him, we're gonna get him," before leaving the motel room prior to the shooting;

- Appellant then left the motel room with Hardy and the two other men and returned with them to the motel with a white box containing drugs and, in the trunk of the car, a green bag containing weapons;

- Appellant admitted that he had gone to Kronbach's apartment knowing that Hardy was armed with a firearm and wanted to kill Kronbach;

- Appellant also admitted that he was present when Kronbach was shot and that he had popped the trunk so the stolen items could be loaded into the trunk of their car; and

- Appellant left Texas for Mississippi after the shooting.

A jury hearing this evidence could reasonably conclude either that Appellant, rather than Hardy, had shot Kronbach or that Appellant had acted as a party in the capital murder of Kronbach by, at a minimum, participating in the robbery knowing that Hardy was armed with a firearm. Applying the appropriate standard of review, we hold that the evidence is sufficient to support the jury's verdict. We overrule Appellant's first point.

**Lesser Included Offense**

In his second point, Appellant argues that the trial court reversibly erred by failing to instruct the jury on the lesser included offense of murder. When he argues this point, Appellant uses the terms "murder" and "felony murder" interchangeably. Appellant was tried for committing capital murder in the course of committing robbery. A person commits capital murder under this theory if the person intentionally commits murder in the course of committing or attempting to commit robbery.[13] A person commits felony murder if the person

> commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.[14]

Appellant argues that because the jury could have thought that the shooting was "spontaneous and unforeseen," the jury should have been instructed that they could convict him of the lesser offense of felony murder.

We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction.[15] First, the lesser offense must come

---

[13]*See* Tex. Penal Code Ann. §19.03(a)(2) (West Supp. 2015).

[14]*Id.* § 19.02(b)(3) (West 2011).

[15]*Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

within article 37.09 of the code of criminal procedure.[16]  An offense is a lesser

included offense under article 37.09 if

> (1)   it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2)   it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3)   it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4)   it consists of an attempt to commit the offense charged or an otherwise included offense.[17]

Courts have held that felony murder is a lesser included offense of capital murder

under article 37.09.[18]  The first prong is therefore met.

The second prong, however, requires some evidence in the record from

which a rational jury could acquit the defendant of the greater offense while

convicting him of the lesser included offense.[19]  That is, some evidence must

permit the rational jury to determine that if the defendant is guilty, he is guilty of

---

[16]Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

[17]Tex. Code Crim. Proc. Ann. art. 37.09.

[18]*See Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673.

[19]*Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672–73; *see also Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006).

the lesser included offense only. But there is no evidence to support a determination that there was no intent on the part of Appellant or on the part of Hardy to cause Kronbach's death. Before they left the motel room, Appellant said he was going to get Kronbach. Appellant knew Hardy was armed with a handgun, and Appellant had a handgun at the motel. Kronbach was shot in the back of the head at close range, and Appellant and Hardy continued with the theft after shooting Kronbach. Nowhere in the record, including in Appellant's statement, is there any suggestion that shooting Kronbach in the head was unintended. Nothing in the record therefore supports a determination that if Appellant is guilty of anything, he is guilty only of the lesser offense of felony murder.

Because Appellant failed to satisfy the second prong, he was not entitled to a jury instruction on felony murder, and the trial court did not err in denying the requested instruction. We overrule Appellant's second issue.

**New Trial in the Interest of Justice**

In his third point, Appellant argues that the trial court abused its discretion by denying the new trial he requested in the interest of justice. "[F]or a trial court to grant a motion for new trial in the interest of justice, the movant must have articulated a valid legal claim."[20] Appellant urges that the new trial should have been granted because one juror regretted her guilty verdict and because the

---

[20] *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014).

State failed to sustain its burden of proof, as he argued in his first point. The Texas Court of Criminal Appeals has explained that

> [t]his is precisely the type of "disgruntled juror" who suffers buyer's remorse that Rule 606(b) prohibits from testifying to impeach his own verdict. A juror's vote, when polled in open court, is a "final sale" item; it cannot be exchanged because that juror later has buyer's remorse. Therefore, the trial judge was not required to credit [the disgruntled juror's] post-trial testimony and would not have abused his discretion by denying appellant's motion for new trial on that ground alone.[21]

Appellant argues that the juror with buyer's remorse in conjunction with the weakness of the evidence mandates a new trial in the interest of justice. We reject Appellant's argument based on the juror with buyer's remorse,[22] and we have already held the evidence sufficient to support the verdict. Because the trial court did not abuse its discretion by denying Appellant's motion for new trial as to either ground, we overrule his third point.

**Exclusion of Evidence**

In his fourth point, Appellant argues that the trial court abused its discretion by excluding evidence that a co-defendant said he loved the way a gun felt in his hand. At trial, Appellant wanted the trial court to admit a portion of the statement of Rochelle Scales, Russell Scales's wife, in which she stated that while talking to her husband on the telephone, she had overheard a conversation between

---

[21]*Colyer v. State*, 428 S.W.3d 117, 126–27 (Tex. Crim. App. 2014) (citations omitted).

[22]*See id.*; *see also* Tex. R. Evid. 606(b)(1).

him and Hardy in which Hardy said that he liked the way a gun felt in his hand. Appellant offered the evidence as a statement against interest under evidentiary rule 803(24).[23] But nothing in the record explains why the statement falls within this exception. Additionally, an erroneous evidentiary ruling requires reversal only if it affects Appellant's substantial right.[24] The record clearly shows that Hardy possessed and carried firearms and had a trunk full of Kronbach's guns. And Russell Scales had already testified that Hardy was "very, very stupid" with the gun Kronbach gave him. Nor was the excluded statement any evidence that Hardy fired the shot that killed Kronbach. As the State concedes, there is no evidence from any source that shows who pulled the trigger during the robbery of Kronbach. The jury could properly convict Appellant as a party even if Hardy fired the gun.[25] We overrule Appellant's fourth point.

**Conclusion**

Having overruled Appellant's four points, we affirm the trial court's judgment.

---

[23]Tex. R. Evid. 803(24).

[24]*See* Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

[25]*See* Tex. Penal Code Ann. § 7.02(a) (West 2011).

                                                    /s/ Lee Ann Dauphinot
                                                    LEE ANN DAUPHINOT
                                                    JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

LIVINGSTON, C.J., and SUDDERTH, J., concur without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 25, 2015