**Modify and Affirm; Opinion Filed October 5, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-18-00271-CR**

**RICKY MORENO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F17-00878-T**

## MEMORANDUM OPINION ON REMAND

Before Chief Justice Burns, Justice Myers, and Justice Molberg
Opinion by Justice Myers

A jury convicted appellant Ricky Moreno of aggravated kidnapping and assessed punishment at 45 years' imprisonment and a $10,000 fine. Appellant brought ten issues, arguing the evidence was (1) legally and (2) factually insufficient to support the jury's rejection of his affirmative defense of duress; (3) the evidence was legally insufficient to support the jury's rejection of his justification defense of necessity; (4) the trial court improperly instructed the jury on the law of parties; (5) the trial court erred in admitting video evidence; (6), (7), and (8) the trial court erred in excluding from the guilt–innocence phase testimony from, respectively, Dr. Lisa Clayton, Dr. Michael Pittman, and Detective Michael Yeric showing appellant

suffered from post-traumatic stress disorder, or PTSD; (9) the trial court erred in denying appellant's pretrial motion to suppress; and (10) the sentence was disproportionate to appellant's conduct during the offense and punishments received by other bystanders. The State also brought a cross-point seeking modification of the judgment.

We reversed and remanded, concluding that evidence regarding PTSD was relevant to showing duress. The Court of Criminal Appeals disagreed, reversing and remanding the case for us to resolve issues—appellant's issues (2), (4), (5), and (10)—that were not addressed in our original opinion. *See Moreno v. State*, 586 S.W.3d 472 (Tex. App.—Dallas 2019), *reversed*, __ S.W.3d ___, No. PD-1044-19, 2020 WL 3265252, at *3 (Tex. Crim. App. June 17, 2020). Having now done so, we affirm the trial court's judgment as modified.

DISCUSSION

### Issue 2: Factual Sufficiency

In his second issue, appellant contends the evidence is factually insufficient to support the jury's rejection of appellant's affirmative defense of duress.[1]

Unlike criminal convictions that are only subject to legal sufficiency review, we may review a finding rejecting an affirmative defense for both legal and factual sufficiency. *Butcher v. State*, 454 S.W.3d 13, 20 (Tex. Crim. App. 2015); *Matlock*

---

[1] Appellant also argued the evidence was legally insufficient to support the jury's rejection of his affirmative defense of duress, a claim we addressed in our previous opinion.

*v. State*, 392 S.W.3d 662, 668–70 (Tex. Crim. App. 2013). In a factual sufficiency review of a finding rejecting an affirmative defense, we view the entirety of the evidence in a neutral light, but do not usurp the function of the jury by substituting our own judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Matlock v. State*, 392 S.W.3d 662, 671 (Tex. Crim. App. 2013). We may sustain a defendant's factual sufficiency claim only if we determine that the verdict is so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id*. When addressing a factual sufficiency challenge, we defer to the jury's determination of the credibility of the witnesses and the weight to give the evidence. *Smith v. State*, 355 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Cleveland v. State*, 177 S.W.3d 374, 388–89 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

To establish the affirmative defense of duress, a defendant must prove by a preponderance of the evidence that he committed the offense because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN. § 8.05(a). Compulsion "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Id*. § 8.05(c); *Edwards v. State*, 106 S.W.3d 833, 843 (Tex. App.—Dallas 2003, pet. ref'd). "'Imminent' means something that is immediate, something that is going to happen now." *Murkledove v. State*, 437 S.W.3d 17, 25 (Tex. App.—Fort Worth 2014, pet. dism'd, untimely filed) (citing *Dewalt v. State*, 307 S.W.3d

–3–

437, 454 (Tex. App.—Austin 2010, pet. ref'd)). "Harm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm, in other words, when a 'split-second decision' is required without time to consider the law." *Id.* (quoting *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd)). Imminence "has two components: (1) the person making the threat must intend and be prepared to carry out the threat immediately, and (2) the threat must be predicated on the threatened person's failure to commit the charged offense immediately." *Cormier v. State*, 540 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Devine v. State*, 786 S.W.2d 268, 270–71 (Tex. Crim. App. 1989) and *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)); *see also Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd).

Imminent harm must be shown by affirmative evidence. *Darty v. State*, 994 S.W.2d 215, 218–19 (Tex. App.—San Antonio 1999, pet. ref'd). A threat of harm at some indefinite time in the future is insufficient to satisfy the requirement of imminence. *Ramirez*, 336 S.W.3d at 851–52; *Anguish*, 991 S.W.2d at 886. The defense of duress is not available "if the actor intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." TEX. PENAL CODE ANN. § 8.05(d). Also, evidence of a generalized fear of harm is not sufficient to raise the issue of imminent harm. *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.). If undisputed facts

–4–

indicate a complete absence of immediate necessity or imminent harm, then a defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law. *Dewalt*, 307 S.W.3d at 454.

As we discussed in our previous opinion,[2] appellant attempted to show he participated in the charged offense under duress by pointing to evidence that Martin Armijo threatened him and pointed a gun at him. The record showed that Armijo had two handguns and an assault rifle in the garage where he tortured and killed Jonathan Gutierrez. In addition, the jury heard Avigail Villanueva testify that appellant seemed nervous when he picked her up at a gas station and drove her to the garage. Appellant's brother, Alex Moreno, testified that appellant looked scared when he arrived at his house on July 1, 2016. Dallas homicide Detective Pedro Trujillano testified that appellant became emotional during their July 1, 2016 interview, and both Trujillano and Detective Casey Shelton acknowledged that appellant repeatedly said he was frightened during the incident. Appellant told the detectives that Armijo pointed a rifle at him.

But the only evidence in the record suggesting Armijo threatened appellant with violence came from appellant's own account of the incident, which the jury was free to reject. Moreover, appellant's claim of duress was inconsistent with the evidence showing he twice left the garage alone—and returned—while Armijo

---

[2] Because the facts of this case were thoroughly discussed in our previous opinion, we do not recount them here except as relevant to appellant's issues.

remained and continued beating and torturing Gutierrez. Armijo's cell phone video showed appellant casually entering the room and walking around the bed while Armijo talked into the camera. The jury also could have considered the fact that appellant hesitated to report the incident, first picking up his mother and then going to his brother's house, where his brother insisted they call 911. Based on evidence such as this, the jury could have rationally concluded appellant was not faced with an imminent threat to himself or his mother. *See, e.g., Murkledove*, 437 S.W.3d at 25; *Dewalt*, 307 S.W.3d at 454.

There is evidence in the record that appellant feared Armijo; that he told detectives Armijo pointed a gun at him; and that he was afraid Armijo would harm his family. But while such evidence may circumstantially support a finding of duress, the entirety of the evidence does not preponderate in favor of such a finding, particularly given the evidence showing appellant repeatedly going to and from the offense location. After reviewing all the evidence in a neutral light, we conclude the jury's rejection of appellant's claim of duress was not so against the great weight and preponderance of the evidence as to be manifestly unjust. The evidence is, thus, factually sufficient to support the jury's rejection of appellant's duress defense. We overrule appellant's second issue.

### Issue 4: Law of Parties

In his fourth issue, appellant contends the trial court erred in submitting a jury charge that included the law of parties.

When analyzing a claim of jury charge error on appeal, we first determine if there was an error, and if so, whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Under *Almanza*, the amount of harm necessary to warrant a reversal depends on whether the appellant objected to the alleged error in the jury charge. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988). If, as in this case, the appellant objected to the complained-of error in the jury charge, the record need only show he suffered some harm as a result of the error to obtain a reversal. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743. This standard requires us to find the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Reeves*, 420 S.W.3d, at 816. In evaluating whether there was some harm, we consider "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171).

"A party is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). Further, a person is criminally responsible for an offense committed by the conduct of another if, "acting

with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2).

To determine whether a person is a party to an offense, we may look to events occurring before, during, and after the commission of the offense, and we may consider circumstantial evidence. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "There must be sufficient evidence of an understanding and common design to commit the offense." *Id*. "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id*. The "mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Id*.

"Evidence is sufficient to convict under the law of parties if it shows the defendant is physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement." *Trenor v. State*, 333 S.W.3d 799, 806–07 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). "Participation as a party in a criminal offense may be inferred from circumstances and need not be shown by direct evidence." *Id*. at 807. "Since an agreement between parties to act together in a common design can seldom be proved by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an

understanding or common design to commit the offense." *Miller v. State*, 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd); *Williams v. State*, No. 05–14–00790–CR, 2016 WL 355115, at *6 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op., not designated for publication). When a party is not a primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); *Williams*, 2016 WL 355115, at *6.

In this case, appellant argues there is no evidence he harbored the specific intent to promote or assist the commission of the offenses, or that they were executing any common design or scheme. He claims the evidence shows that he only acted under duress or out of necessity. But there is evidence that allowed a reasonable jury to conclude appellant was physically present during the offense and that he aided in its commission. More specifically, there is evidence appellant aided Armijo by leaving the offense location to purchase cleaning supplies that were used to clean up blood from the crime scene; that appellant left the offense location a second time to pick up Villanueva and bring her to the crime scene (where she witnessed Gutierrez's torture and death); and that appellant held Gutierrez's legs (at Armijo's instruction) so Armijo could tape his hands together. There is, in other words, evidence showing appellant's knowing assistance in the commission of the charged offense. We conclude the trial court did not err in instructing the jury on the law of parties, and we overrule appellant's fourth issue.

## Issue 5:  State's Exhibit 77-A

In his fifth issue, appellant argues the trial court erred in admitting State's exhibit 77-A, Armijo's cell phone video that briefly shows appellant moving in the background as Armijo points a pistol at Gutierrez and beats, taunts, and threatens him.

We review a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Nickerson v. State*, 478 S.W.3d 744, 757 (Tex. App.—Houston [1st Dist.] 2015, no pet.).  A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *see also Martinez*, 327 S.W.3d at 736.  We will uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *see Martinez*, 327 S.W.3d at 736.

Evidence is relevant if it has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401.  Only relevant evidence is admissible. *See id*. 402.  Under rule of evidence 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Exceptions

–10–

to this rule include admission of the evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). This list is illustrative rather than exhaustive, and extraneous offense evidence "may be admissible when a defendant raises a defensive issue that negates one of the elements of the offense." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). "Thus, a party may introduce evidence of other crimes, wrongs, or acts if such evidence logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Id.*

Evidence that is admissible under rule 404(b) may nonetheless be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012); *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez v. State*, 544 S.W.3d 363, 372 (Tex. Crim. App. 2018).

Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). All evidence against a defendant is, by its nature, designed to be prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013). Rule 403 does not exclude all

prejudicial evidence; instead, it focuses on the danger of unfair prejudice. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence is unfairly prejudicial if it has the capacity to lure the factfinder into declaring guilt on a ground other than proof specific to the offense charged. *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003). The trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006).

A rule 403 balancing test includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). A rule 403 analysis may also consider whether there is any tendency of the evidence to confuse or distract the jury from the main issues as well as any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). As the court acknowledged, however, "these factors may well blend together in practice." *Id*. at 641–42.

At a pretrial hearing held on February 19, 2018, appellant's trial counsel called the trial court's attention to cell phone videos Armijo had "made of himself torturing Jonathan Gutierrez." Counsel argued that these videos were "totally irrelevant" and that "[w]hatever relevance they may have is totally outweighed by the prejudicial

value." The trial court ultimately admitted State's exhibit 77—the disc containing the four cell phone videos Armijo made—for record purposes and admitted State's exhibit 77-A—the video clip showing appellant moving in the background—for all purposes.

Appellant claims exhibit 77-A was inadmissible under rules 403 and 404(b), arguing "the video evidence was not relevant to a contested fact of consequence nor was it admissible as an exception to Rule 404(b)." He also argues that "[t]he unduly prejudicial nature of the video, which shows the brutal torture Armijo inflicted upon complainant, muddied the waters of Appellant's culpability and made it likely that the jury found Appellant guilty for Armijo's actions." According to appellant, "the video could only inflame the jury and cause it to conflate Armijo's actions with Appellant's."

It is true that exhibit 77-A shows Armijo repeatedly beating and torturing Gutierrez, but it also shows, toward the end of the video, appellant casually entering the room and walking around the bed while Armijo talked directly into the camera. Appellant is holding what appeared to be a bottle of bleach in a plastic grocery store sack, and he placed the bleach and what looked like towels on the bed. The evidence showed that the bleach and towels were purchased to clean up the blood at the crime scene, and Detective Shelton testified that appellant did not appear to be afraid in the video. The trial court could have reasonably concluded the cell phone video in State's exhibit 77-A was relevant to one of the core central contested issues in the

–13–

case, i.e., whether appellant was a willing participant in the offense. As for rule 404(b), it was within the zone of reasonable disagreement for the court to have determined the video did not suggest the jury should convict appellant for character-conformity purposes, but rather, that it provided visual evidence of the charged offense of aggravated kidnapping and appellant's willing participation in that offense.

Turning to rule 403, although the video graphically depicted the torture Armijo inflicted on Gutierrez, we do not agree that any prejudice in the video's admission substantially outweighed its probative value. The trial court could have reasonably concluded the probative force of the evidence, and the State's need for it, outweighed any tendency of the evidence to suggest a decision on an improper, emotional basis. The court also could have reasonably determined that the video—only two minutes and thirty-three seconds in length—neither distracted from the central issue in the case nor had any tendency to be given undue weight by the jury. Similarly, the video's presentation did not consume an inordinate amount of time or merely repeat evidence that had already been admitted. And while other testimony and photographic evidence depicted the torture inflicted on Gutierrez, the video was the only visual evidence of appellant at the crime scene and it showed his demeanor during the offense. It was evidence of appellant's awareness that a crime was occurring, and it supported the argument that appellant was a party to the offense

and not a mere bystander. Therefore, we conclude no abuse of discretion has been shown under rules 403 or 404(b), and we overrule appellant's fifth issue.

## Issue 10: Disproportionate Sentence

In his tenth issue, appellant contends his sentence "was disproportionate both to his conduct during the offense and to the punishments received by the other bystanders."

The concept of proportionality is embodied in the Eighth Amendment's proscription against cruel and unusual punishment. U.S. CONST. AMEND. VIII; *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). However, this is a "narrow principle" that does not require strict proportionality between the crime and the sentence. *Simpson*, 488 S.W.3d at 322 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). It forbids only those extreme sentences that are so "grossly disproportionate" to the crime as to amount to cruel and unusual punishment. *Id*. (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality op.)). A sentence is grossly disproportionate to the crime "only in the exceedingly rare or extreme case." *Id*. at 322–23. Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual. *Id*. at 323.

To determine whether a sentence is grossly disproportionate to a particular defendant's crime, we first consider the severity of the sentence in light of the harm caused or threatened to the victim or victims, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Id*. In the rare case in

which this threshold comparison leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences of other offenders in Texas and with the sentences imposed for the same crime in other jurisdictions. *Id.* "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.*

In this case, appellant was charged with aggravated kidnapping, a first-degree felony offense punishable by confinement for life or a term of not more than ninety-nine years and not less than five, and a $10,000 fine. *See* TEX. PENAL CODE ANN. §§ 12.32, 20.04(c). Moreover, the State alleged, and the jury found to be true, an enhancement paragraph alleging a prior felony conviction for aggravated assault that increased the minimum term of confinement from five years to fifteen. *See id.* § 12.42(c)(1). Appellant's sentence of forty-five years' confinement and a $10,000 fine was within the applicable punishment range. Based on the record in this case, we cannot say this is one of those rare or extreme cases that would lead to an inference that appellant's sentence was grossly disproportionate to the offense. Accordingly, we overrule appellant's tenth issue.

### State's Cross-Point

The State also brings a cross-point arguing the judgment should be reformed to accurately reflect appellant's plea of not true and the jury's finding of true to the enhancement paragraph.

The indictment charged appellant with aggravated kidnapping and contained

a single enhancement paragraph alleging appellant had a previous felony conviction for aggravated assault. At the beginning of the punishment phase of trial, appellant entered a plea of not true to the enhancement paragraph, which the jury found true. The judgment, however, has the notation "N/A" in the sections for "Plea to 1st Enhancement Paragraph" and "Finding on 1st Enhancement Paragraph."

Where the record contains the necessary information to do so, the court on appeal has the authority to modify incorrect judgments. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). An appellate court has the power to correct and reform a trial court's judgment to make the record speak the truth when it has the necessary data and information to do so or make any appropriate order as the law and nature of the case may require. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Therefore, we will modify the judgment to accurately reflect appellant's plea of not true and the jury's finding of true on the first enhancement paragraph. *See* TEX. R. APP. P. 43.2(b); *Asberry*, 813 S.W.2d at 529.

As modified, we affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180271RF.U05

–17–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICKY MORENO, Appellant

No. 05-18-00271-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas Trial Court Cause No. F17-00878-T. Opinion delivered by Justice Myers. Chief Justice Burns and Justice Molberg participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under the part of the judgment entitled "Plea to 1st Enhancement Paragraph," "N/A" should be changed to "Not True."

Under the part of the judgment entitled "Findings on 1st Enhancement Paragraph," "N/A" should be changed to "True."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 5th day of October, 2020.